SOFTWARE A.G. OF NORTH
AMERICA, INC.,
Appellant,

v.

The CITY OF COLUMBIA,
Missouri, Respondent.

No. WD 49926.

Missouri Court of Appeals,
Western District.

July 25, 1995.

Joel P. Kidwell, Columbia, for appellant.

Susan G. Crigler, Columbia, for respondent.

Before KENNEDY, P.J., and SMART, and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Plaintiff–Appellant Software A.G. of North America, Inc. appeals from the trial court's judgment in favor of Defendant–Respondent the City of Columbia in this breach of contract action. The trial court did not err in entering judgment in favor of the City of Columbia because the unpaid invoice, which is the subject matter of this appeal, was unenforceable because it extended a 1985 contract beyond the five year limitation imposed by section 2–461 of the Columbia Code of Ordinances.

Judgment affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a breach of contract claim by Software A.G. of North America, Inc. ("Software A.G.") against the City of Columbia ("the City"). On March 29, 1985, Robert Hash, purchasing agent for the City, entered into a contract on behalf of the City with Software A.G. for the licensing of computer software.[1] Pursuant to the Agree-

---

1. The terms of the 1985 contract were set out in an agreement entitled "Agreement for License of Proprietary Software Products" ("Agreement") and an attachment to this Agreement entitled "Product Attachment to Agreement for License of Proprietary Software Products" ("Product Attachment").

ment, the City paid $123,000.00 to Software A.G. for the right to a perpetual license for certain software. This portion of the contract is not contested.

The City also contracted to receive certain technical services from Software A.G., including system updates, system versions, documentation updates, phone support and limited field technical support. The Agreement and Product Attachment provided that Software A.G. would provide these technical services at no cost to the City for the first year, which ran from May 1, 1985, through April 30, 1986. It provided that the City would pay for technical services in subsequent years at the "then current price," stating as follows:

> After the first year, Licensee agrees to pay, annually to Software A.G., the then current price of Technical Services for the Product. Payment is due in advance on the installation date anniversary.

> Delivery of Product. Product will be shipped within 30 days after confirmation of order, subject to conditions beyond Software A.G.'s control.

Each contract year was to run from May 1st to the following April 30th. The Agreement also stated that an additional charge would be added for repairs to any systems problems that were of user origin. This fee would be based on Software A.G.'s then current standard technical assistance rates.

The 1985 Agreement provided that Software A.G. could cancel its obligation to provide technical services by giving ninety days written notice and that "[a]t the end of the ninety (90) day period, Software A.G. is no longer responsible for maintenance of the no longer current Product." Software A.G.'s witness testified that if the City wanted to cancel the technical services contract it had to send Software A.G. written notice of cancellation within thirty days of receiving an invoice for the cost of technical services for a succeeding year. However, no cancellation provision containing such terms is in fact contained in either the Agreement or the Product Attachment.

The first yearly anniversary of the Agreement ended on April 30, 1986. On or about the anniversary date, Software A.G. sent the City an invoice for technical services to be rendered during the following year. The City paid Software A.G. the amount of the invoice. This practice continued for the next five years (1987, 1988, 1989, 1990 and 1991) without incident, although in at least one year the City did not pay the invoice until several months after the service year had begun.

The City offered evidence that it received a notice from Software A.G. on June 10, 1990, which stated that Software A.G. would be discontinuing support for the computer programs used by the City—Natural Version 1 and all ADABAS Version 4—effective May, 1991. Software A.G. sent the City new updated software—Natural Version 2 and ADABAS Version 5.0. The City never installed this updated software. The City also presented evidence that it communicated to Software A.G. in 1990 that it was undergoing a review of computer operations and was uncertain whether the City would continue to need technical services from Software A.G. in 1991.

On May 29, 1991, Software A.G. sent the City a new invoice for technical services to be rendered from May 1, 1991, through April 30, 1992, in the amount of $32,812.50. The City did not remit payment on this invoice. Rather, seven months later, on January 15, 1992, the City sent Software A.G. a written notice which stated its intent to cancel the technical services portion of the contract and said it would not pay the May, 1991, invoice.

Software A.G. presented evidence that, although the City was late on payment, Software A.G. had continued to provide technical services during the final seven months prior to receipt of notice of cancellation from the City. The City presented evidence that this was not the case, and that during the seven months since the close of the last contract year it had made only one "brief" phone call to Software A.G. The City said that the call was about a specific technical problem which ended up not being related to the software. This suit followed.

The City contended during the trial that any agreement to extend technical services beyond May, 1991, was void because it would

have extended the contract beyond the period of time authorized by section 2–461 of Article X of the Columbia Code of Ordinances. That ordinance requires rebidding on contracts of more than five years duration and on contracts extended for longer than five years. The City also argued that the unpaid invoice was not certified by the Director of Finance as required by section 42 of the Charter of the City of Columbia.

It was Software A.G.'s position that each succeeding year's invoice for technical services constituted a new, independent and enforceable one year contract and thus was not subject to the ordinances requiring rebidding of contracts which extend beyond five years. Software A.G. did not present any evidence as to whether the invoice was certified by the Director of Finance of the City of Columbia.

After hearing the evidence, the trial court entered judgment in favor of the City without making specific findings and conclusions of law. This timely appeal followed.

## II. THE TRIAL COURT DID NOT ERR IN ENTERING JUDGMENT IN FAVOR OF THE CITY OF COLUMBIA BECAUSE CONTRACT WAS VOID

### A. Standard of Review.

In suits tried before a court without a jury, an appellate court will "review the case upon both the law and the evidence as in suits of an equitable nature," with due regard "given to the opportunity of the trial court to have judged the credibility of witnesses." Rule 73.01(c). The trial court's decision must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### B. The Contract Extension is Void Because it Extended The City's Contract with Software A.G. Beyond Five Years Without ReBidding in Violation of Section 2–461 of the Columbia Code.

■ Municipalities are expressly prohibited from entering into contracts unless the

contracts are "within the scope of [their] powers or ... expressly authorized by law." § 432.070.[2] It is well-established in Missouri that this requirement is "mandatory and not merely directory," *Fenton v. Executive Int'l Inn, Inc.*, 740 S.W.2d 338, 340 (Mo.App.1987), and that any contract entered into by a municipality beyond the scope of its power is void and not merely voidable, *Union Mkt. Merchants Ass'n v. St. Louis*, 643 S.W.2d 72, 73 (Mo.App.1982). Moreover, a party contracting with a municipality is chargeable with knowledge of these requirements and of the limitations on the ability of the municipality to enter into the contract. *Bride v. Slater*, 263 S.W.2d 22, 26 (Mo.1953).

■ Article X of the Columbia Code of Ordinances established the guidelines for the City of Columbia to enter into contracts for purchases of supplies, materials, services, etc. Section 2–461 of Article X states:

### No Contract to Exceed Five Years

No contract for the provision of any service, supply, material or equipment shall be let for a period to exceed five (5) years, *nor shall any contract for the provision of any services, materials, supplies or equipment be extended for a period in excess of five (5) years without an opportunity for public bidding or a request for proposals....*

Article X, § 2–461, City of Columbia Code of Ordinances (emphasis added). It is undisputed that the Software A.G. contract was not rebid.

The original Agreement between Software A.G. and the City was executed in March, 1985, by Robert Hash, the City's purchasing agent. The Product Attachment provided for free technical services for the first year. After that, the contract for technical services was in effect extended annually by payment of Software A.G.'s invoice for services to be rendered in the succeeding year. The technical services for which Software A.G. seeks payment in this cause of action are for the period of May, 1991, through April, 1992. This extension is beyond the five year limita-

**2.** All statutory references are to RSMo 1986, unless otherwise stated.

tion set forth in section 2–461, which ended on April 30, 1990. Thus, if the limitation applies, the City was without authority to extend the contract by paying the invoice without rebidding.

Software A.G. contends that section 2–461 did not apply so as to require it to rebid the contract because the invoice for technical services was a new one-year contract for the term May, 1991 through April, 1992, and not an extension of the 1985 Agreement. According to Software A.G., the "total agreement calls for an annual renewal of the contract with the accompanying right of the respondent to cancel the *new* contract within 30 days." Software A.G. contends this is demonstrated by the yearly invoices which "reflect this because the dates cover a one-year term and the price is set as a lump sum yearly payment."

The charge of this Court in construing section 2–461 is to "give effect to the purpose of its enactment" and its evident intent. *AT & T Info. Sys., Inc. v. Wallemann,* 827 S.W.2d 217, 223 (Mo.App.1992). It is the stated policy of the City to "encourage competitive business practices through public bidding or request for proposals wherever possible and feasible." Article X, § 2–460(d), Columbia Code of Ordinances. In furtherance of this policy, section 2–461 prohibits contracts from being extended for more than a total of five years without the opportunity for public bidding. If this Court were to interpret extensions or renewals of existing contracts as new one-year contracts, then the requirement of rebidding could be avoided ad infinitum by simply labeling each extension as if it were a new contract. Such an interpretation of section 2–461 would be nonsensical for it would undermine the purpose for which the section was enacted, effectually rendering that section a nullity.

Moreover, whether the contract is called a "renewal" or an "extension", a plain reading of the face of the invoice and of the 1985 Agreement leads to the conclusion that the invoice was merely what it purported to be— a bill for services to be provided under the 1985 Agreement for the service year of May, 1991, through April, 1992. The essential terms of the technical services agreement, including the type of services to be provided, are stated in the 1985 Agreement and not in the invoice. Even Software A.G. recognized the continued application of the 1985 Agreement, for it exercised the right to cancel technical services for certain software by giving 90 days notice as permitted in the 1985 Agreement. Moreover, Software A.G.'s contention that the invoice was a "new" contract because it was subject to a new thirty day cancellation is simply incorrect, for the invoice does not contain a provision allowing for cancellation in thirty days (indeed, neither does the 1985 Agreement).

For these reasons, we find that the unpaid invoice was simply an offer to extend the 1985 Agreement. The City was not required to accept the offer. It could be rejected. Moreover, any such acceptance would have been void and unenforceable against the City, for it would have extended the contract beyond the five year limitation stated in section 2–461. *See Homebuilders Ass'n of Greater Kansas City v. Kansas City,* 431 S.W.2d 111, 113 (Mo. banc 1968) (contracts entered into beyond scope of authority of city are void). Because we determine judgment for the City was proper on this basis, we do not address the other bases on which the City argued judgment was properly rendered in its favor.

For the reasons stated above, the judgment of the trial court is affirmed.

All concur.