**K.C. AIR CARGO SERVICES, INC., Respondent,**

**v.**

**The CITY OF KANSAS CITY, Missouri, Appellant.**

**WD 79786**

Missouri Court of Appeals, Western District.

OPINION FILED: March 7, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

Application for Transfer Denied June 27, 2017

Christopher Shank, Stephen Moore, Mission Woods, KS, for Respondent.

Dorothy Campbell, Kansas City, MO, for Appellant.

Before Division One: James Edward Welsh, P.J., Anthony Rex Gabbert, and Edward R. Ardini, Jr., JJ.

James Edward Welsh, Presiding Judge

The City of Kansas City, Missouri, appeals the circuit court's grant of summary judgment in favor of K.C. Air Cargo Services, Inc. (KCACS) and the denial of the City's cross-motion for summary judgment in a declaratory judgment action concerning the meaning and validity of a clause in a lease agreement between the parties for land at Kansas City International Airport. The circuit court granted KCACS's motion for summary judgment declaring that the clause in question gave KCACS the unqualified right to renew the lease at its election under all circumstances in perpetuity and that the clause created a definite and enforceable mechanism for determining the rental rate of the renewal. The circuit court also awarded KCACS attor-

neys' fees based upon its finding of special circumstances.

The City asserts four points on appeal. First, it contends that the circuit court erred in declaring the lease clause to be a valid and enforceable option to renew because the clause is void ab initio as beyond the scope of authority of the City. Second, even if the clause in the lease is a valid option, the City claims that the circuit court erred as a matter of law in declaring that the lease gave KCACS a perpetual option to renew the lease. Third, the City asserts that the circuit court erroneously declared and misapplied the law in awarding attorneys' fees to KCACS. Fourth, the City contends that the circuit court erred in denying the City's cross-motion for summary judgment because the clause in the lease was not an option to renew but was a right of first refusal. We affirm in part and reverse and remand in part.

When considering appeals from summary judgments, we view the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record established that KCACS is a Missouri corporation and that the City is a municipal corporation. KCACS and the City are parties to a lease for a tract of real property owned by the City and located at the Kansas City International Airport.[1] The original lease was entered into on June 18, 1986, but has been amended four times: First Amendment dated September 15, 1987; Second Amendment dated December 28, 1987; Third Amendment dated December 16, 1994; and Fourth

Amendment dated January 1, 2015. The lease permitted KCACS to use the leased premises to construct air cargo facilities, including a building and aircraft apron. According to the lease, KCACS desired to lease the land to construct "certain buildings, facilities and improvements described as the Air Cargo Terminal" "for use by others."

As a tenant, KCACS constructed substantial improvements on the property, including a single-story shipping warehouse approximately 70,000 square feet in size and an abutting air cargo apron approximately 500,000 square feet in size.[2] KCACS acts a sub-landlord on the leasehold, renting warehouse space to subtenants.

As set forth in the First Amendment to the lease, the base term of the lease is for 30 years. The lease provides: "The Lease Term shall commence on October 1, 1987 ... and shall run for a period of thirty (30) years." The lease also provides this clause, which is at issue in this case: "At the end of the Lease Term, Lessee shall be given the opportunity to lease the Premises at the then fair market rental rate or the rental rate which has been offered to the City by another party, whichever is higher."

On July 17, 2013, KCACS filed a lawsuit against the City alleging that the City was liable for certain physical damage to the leasehold premises caused by subsurface water migration from City property. *KC. Air Cargo Services, Inc. v. City of Kansas City, Missouri*, Case No 1316–CV17929 (Jackson Cty. Cir. Ct.). In this litigation, KCACS claimed that the physical damage to the premises had deprived it of profit-

---

1.  KCACS became a party to the lease by virtue of a complete assignment from Haith & Company, Inc., dated August 26, 1986.

2.  The air cargo apron leasehold was substantially reduced in the 2015 Fourth Amendment to the lease from its previous size to a 50 foot wide strip abutting the warehouse.

generating opportunities by preventing it from attracting or keeping certain sub-tenants, and KCACS sought lost profits extending past the expiration of the lease on September 30, 2017. The City filed a motion in limine asking the Court to exclude damages for lost profits allegedly suffered after the expiration of the base term of the lease. The City claimed that the alleged renewal clause in the lease was unenforceable and was "a void lease provision." In overruling the City's motion in limine, the circuit court stated that the renewal clause was "sufficiently detailed ... enough that it would be enforceable for a period of 10 years," "so the motion in limine to eliminate that 10–year extension in a damage calculation is overruled[.]" The lawsuit was eventually settled and in connection therewith the Fourth Amendment to the lease was signed by the parties.

Following the settlement of the lawsuit, an article appeared in the Missouri Lawyers Weekly on March 26, 2015, concerning the settlement of the litigation. The article attributed the following statements to Assistant City Attorney Chad Stewart, an attorney for the City in the litigation:

> The city doesn't know if KCACS will be able to renew its lease, even if it wanted to. The city has a good relationship with the company, Stewart said, but that may not be a factor. If the city cut out the middle-man and rented the property directly, instead of the ground lease to KCACS, the city could make back the cost of the settlement in three to four years, according to Stewart.
>
> "[The City] can't just go out and spend $1.75 million and not make it back," he said.

Allyssa D. Dudley, *City settles with cargo company over water leak*, Missouri Lawyers Weekly, March 26, 2015.[3]

Thereafter, on April 21, 2015, counsel for KCACS sent a letter to the City seeking confirmation that the City would honor the renewal option under the lease. On April 22, 2015, counsel for the City responded by e-mail stating that, since the lease was not ending until 2017, the City had not "made any final business decision" whether it would allow KCACS to renew the lease. The e-mail stated "I am sure someone from the Aviation Department staff will let your client know within a reasonable time prior to the end of the Lease what the City intends to do."

Shortly after receiving the City's e-mail, KCACS file its declaratory judgment action with the circuit court requesting a declaration regarding the construction and enforceability of the lease and the renewal option clause. KCACS also claimed that the City's email response to its inquiry seeking confirmation that the City would honor the renewal option under the lease was inconsistent with the circuit court's order in the prior lawsuit, which gave KCACS the option to extend the term of the lease. In response, the City filed an answer and an amended answer claiming that the clause was a right of first refusal and that, if the clause were an option to renew, it was void because it violated a 50 year lease term limitation set forth in section 82 of the City's Charter.

KCACS filed a motion for summary judgment and suggestions on September 11, 2015. KCACS attached to its motion for summary judgment the affidavit of Myron Haith, KCACS President. Haith stated that "the City's refusal to commit to honoring the renewal provision in the Lease

---

3. In response to KCACS's statement of uncontroverted facts, the City admitted that the article in the Missouri Lawyers Weekly was "a true and accurate copy" of the article but denied all other allegations.

threatens to derail KCACS' negotiations with potential subtenants who require subleases with KCACS longer than the approximately two years remaining on the base term of the Lease that expires in September, 2017." In response to KCACS's statement of uncontroverted facts, the City said that it was without sufficient information or belief to admit or deny the allegations appearing in Haith's affidavit and, therefore, denied the allegations. The City filed a cross-motion for summary judgment and response to KCACS's motion for summary judgment. The City requested that the circuit court declare that the clause at issue was a right of first refusal or declare that, if the clause were an option to renew, it violated a 50 year lease term limitation set forth in section 82 of the City's Charter. On March 17, 2016, the circuit court granted KCACS's motion for summary judgment and denied the City's cross-motion for summary judgment. The circuit court declared that the renewal clause granted KCACS the unqualified right to renew the Lease at its election in all circumstances in perpetuity. In its order, the circuit court stated that KCACS could "submit further briefing on the issue of whether special circumstances support[ed] an award of attorneys' fees in this case."

On April 8, 2016, KCACS filed a motion for attorneys' fees and costs. After considering the parties suggestions in support of and in opposition to the motion for attorneys' fees, the circuit court granted KCACS's motion for attorneys' fees. The court stated:

> [B]ased on the facts set forth in the Court's prior Order and Judgment and discussed at length in KCACS' papers, the Court finds special circumstances for the award of attorneys' fees stemming from the lack of substantial grounds for the City's position, the improper interference with KCACS' property rights,

the shifting position of the City on the meaning and interpretation (if any) to be given to the disputed renewal provision of the Lease, and the apparent financial motivation for the City's actions.

The City did not dispute the amount of attorneys' fees and costs requested by KCACS. The circuit court, therefore, found that the requested amounts of $66,196.00 for attorneys' fees and $3,248.80 in costs were reasonable. The City appeals, presenting four points on appeal. We address the points out of order by considering the fourth point relied on first and then considering the remaining three points relied on in order.

█ In its fourth point on appeal, the City contends that the circuit court erred in denying its cross-motion for summary judgment because the clause in the lease was not an option to renew but was a right of first refusal. Generally, an order denying a motion for summary judgment is an interlocutory order and is not reviewable on appeal. *James v. Paul*, 49 S.W.3d 678, 682 (Mo. banc 2001). However, "the overruling of a party's motion for summary judgment can be reviewed when its merits are intertwined completely with a grant of summary judgment in favor of an opposing party." *Bob DeGeorge Assocs., Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 596–97 (Mo. banc 2012). Because the issue presented by the City in its cross-motion for summary judgment is so intertwined with the issues granting KCACS's motion for summary judgment, we review the City's point relied on challenging the circuit court's denial of its cross-motion for summary judgment.

In its cross-motion for summary judgment, the City claimed that this case presented an issue of contract interpretation that the court was able to decide as a matter of law and that, under the law, the

lease clause at issue was not an option to extend the lease but was a right of first refusal to lease the premises. The circuit court disagreed and granted summary judgment in favor of KCACS, declaring as a matter of law that the renewal clause set forth in the lease was definite and enforceable; that, pursuant to the terms of the clause, KCACS had the unqualified ability to renew the lease at its election; that, if KCACS exercised its option to renew the lease, the renewal would commence a 30–year tenancy under the same terms and conditions as the current tenancy with the rental rate to be determined in accordance with the renewal clause; and that KCACS's right of renewal existed perpetually such that every 30 years KCACS had the unqualified ability to renew the lease again for another 30 years if it so elected.

Our review of a summary judgment is de novo. *ITT Commercial*, 854 S.W.2d at 376. We review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 380; Rule 74.04.

■ The lease clause at issue in this case provides: "At the end of the Lease Term, Lessee shall be given the opportunity to lease the Premises at the then fair market rental rate or the rental rate which has been offered to the City by another party, whichever is higher." The issue is whether this clause creates an option to KCACS to lease the premises or if it creates a right of first refusal. The City asserts that (1) the preferred interpretation of the clause is a right of first refusal because it sustains the validity of the clause; (2) the plain language of the clause and the four corners of the lease evidence the parties' intent that that clause is a right of first refusal and not an option; and (3) interpretation of the clause as a right of first refusal is a more probable and reasonable interpretation because interpretation of the clause as an option creates unreasonable results. We disagree.

■■ The interpretation of a contractual provision is a question of law. *Wilson Mfg. Co. v. Fusco*, 258 S.W.3d 841, 844 (Mo. App. 2008). "In interpreting leases our primary concern is to give effect to the true intention of the parties by considering the language used in the lease." *Wash. Univ. v. Royal Crown Bottling Co. of St. Louis*, 801 S.W.2d 458, 464 (Mo. App. 1990).

In *Anderson v. Parker*, 351 S.W.3d 827 (Mo. App. 2011), this court explained the differences between an option and a right of first refusal:

"A true option 'creates in the optionee a power to compel the owner of property to [lease] it at a stipulated price whether or not he is willing to part with ownership.'" On the other hand, a right of first refusal, or preemptive right, requires the [lessor], when and if he decides to [lease] the stipulated piece of property, to first offer the property to the [lessee], either at the stipulated price or at a price and on the terms the [lessor] is willing to [lease]. "The preemptive right is merely contingent until the [lessor] arrives at a decision to [lease] the property, at which point the preemptive right ripens into a full option." "The person holding the right of first refusal or preemption cannot compel an unwilling [lessor] to [lease]." Rather, once the [lessor] chooses to [lease], the holder of the preemption has the option of [leasing] the property in accordance with the agreement. "The right of first refusal is most frequently

given in connection with the sale or lease of real estate."

*Id.* at 831 (citations omitted). The plain language of the clause evidences the parties' intent that the clause is an option and not a right of first refusal. The language used in the clause compels the City to lease the premises at a stipulated price whether or not the City is willing to part with ownership. The clause states that KCACS "shall" be given the opportunity to lease the premises at a stipulated price of "fair market rental rate or the rental rate which has been offered to the City by another party, whichever is higher." We find nothing in the language of the lease clause that gives the City the right to decide whether or not it desires to lease the premises. That the clause should be interpreted as a right of first refusal is not logical. As written, the lease allows the City to solicit a third party offer to lease the premises at a price that the third party is willing to pay but then allows the City the option to forgo that offer and demand a higher fair market value from KCACS. Such a situation is not a "classic right of first refusal" as the City claims.

Moreover, to the extent that the City contends that the clause is "a classic right of first refusal" because "the plain language of the clause contemplates and requires a prior offer by a third party to

lease the property in order to establish 'the higher' rent,'" its contention is without merit. The clause contemplates a guaranteed right of renewal at fair market value regardless of whether a third party offer is made. If a third party offer is not made, the value of the third party offer is zero, and the higher rate that KCACS would have to pay would be fair market value.[4]

■ Further, although the City seemingly suggests that the use of the word "opportunity" to lease the premises evidences an intent of right of first refusal, we are not persuaded. We are to interpret a contract by what its language means rather than by the definition of certain terms or what the parties call it. *Hoppock v. Gaines*, 284 S.W. 191, 194 (Mo. App. 1926). Although we recognize that the clause did not use the words option and renewal, which most certainly would have been better, courts are not to "quibble or set up technical connotations in meaning between the words ... used in a written lease renewal option clause." *Davison v. Rodes*, 299 S.W.2d 591, 595 (Mo. App. 1956).[5] The circuit court concluded that the word "opportunity" is synonymous with the word "option." Indeed, Merriam–Webster Thesaurus states that an "option" is "the power, right, or *opportunity* to

---

4. To the extent that the City contends that interpretation of the clause as an option creates unreasonable results in that the lease does not clarify which lease terms and conditions control, its contention is also without merit. When a renewal option does not specify the terms and conditions of renewal, a renewal "on the same terms and conditions is imported and implied." *Davison v. Rodes*, 299 S.W.2d 591, 595 (Mo. App. 1956). The option in this case also specifies that rent shall be calculated "at the then fair market rental rate or the rental rate which has been offered to the City by another party, whichever is higher." The Fourth Amendment to the lease also provides: "To reflect the fair market rental of

the Leased Premises, ground rent will be adjusted beginning January 1, 2016 and each year thereafter, based on the annual percentage change in the Consumer Price Index for All Urban Consumers ("CPI–U")." We find that no unreasonable results are created by interpreting the clause as an option.

5. In *Davison*, the court concluded that the term "release" used in the lease meant "release" and concluded that it should not "set up technical connotations in meaning between the words 'renew,' 'extend' or 'release,' when used in a written lease renewal option clause." 299 S.W.2d at 595.

choose[.]" Merriam Webster Thesaurus, http://www.merriamwebster.com/thesaurus/option (last visited Feb. 15, 2017) (emphasis added). We agree with the circuit court, under the language used in the lease, we see no difference between giving KCACS the option and giving KCACS the opportunity to lease the premises.

As a matter of law, we conclude that the plain language of the clause and the lease evidence the parties' intent that that clause at issue is an option to lease the premises and not a right of first refusal. Therefore, the circuit court did not err in denying the City's cross-motion for summary judgment. We deal with the City's contentions that construing the clause as an option renders the lease invalid in the next point on appeal.

■ In its first point on appeal, the City contends that the circuit court erred in granting summary judgment to KCACS by erroneously declaring and applying the law by concluding that the clause in the lease was a valid and enforceable option that gave KCACS the unqualified ability to renew the lease perpetually for successive 30 year terms. The City asserts that, if the clause in the lease is an option (which we have concluded that it is), it is unenforceable because it results in a lease term being in excess of 50 years and is void ab initio as beyond the scope of authority of the City pursuant to section 82 of the City's Charter and § 432.070, RSMo Cum. Supp. 2013. We disagree.

Section 432.070 provides: "No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law[.]" At the time that the original lease was executed, section 82 of Kansas City's Charter provided:

[E]xcept as otherwise provided in this charter, all other contracts not to be performed within one (1) year shall be void; provided, however that nothing herein contained shall be deemed to refer to contracts in the nature of leases to or by the city which may be made for a term not exceeding fifty (50) years[.][6]

■ The lease in this case was originally for a term of 30 years. As we have already concluded, the clause in question gave KCACS the option to renew the lease. If KCACS decides to exercise that option, the renewal of the lease would not create a 60 year lease as the City suggests. The agreement to lease the premises again at the end of the initial term reflects a renewal of the lease that contemplates the execution of a new lease for a new term. A provision for renewal is "merely a demise for the original term with a privilege for a new lease for an extended term." *Bussen v. Del Commune*, 239 Mo.App. 859,199 S.W.2d 13, 22 (1947).[7] Thus, if KCACS

---

**6.** This 50 year lease term limitation in section 82 was in effect when the original lease containing the renewal option was signed on June 18, 1986, and was in effect when the renewal option was again set forth in the First Amendment to the lease, signed on September 15, 1987. On August 8, 2006, section 82 was repealed by the adoption of a new City Charter by the electors of Kansas City.

**7.** In *Bussen*, the court explained the difference between the right of renewal and the right of extension:

There is of course a technical distinction between a provision in a lease for a renewal and a provision for an extension of the term at the option of the lessee, the former being regarded as merely a demise for the original term with a privilege for a new lease for an extended term, and the latter as a present demise for the full term to which the lease may be extended upon the exercise of the lessee's op-

exercises the option to renew the lease, the result is "the creation of a new tenancy by the execution of a new lease upon the expiration of the original term." *Id.* In other words, KCACS and the City will have executed two distinct leases, on the same terms and conditions, each for a period of 30 years.

The City relies on *Software A.G. of North America, Inc. v. City of Columbia*, 903 S.W.2d 641 (Mo. App. 1995), to argue that the renewal clause in the lease should not be interpreted to allow the lease in this case to continue forever or even for another 30 years on the same terms and conditions in violation of the City Charter. In *Software*, the City of Columbia entered into an agreement in 1985 for the licensing of computer software and also contracted to receive certain technical services from Software A.G. *Id.* at 641–42. The agreement stated that, after the first year of the contract, the City of Columbia agreed "to pay, annually to Software A.G., the then current price of Technical Services for the Product." *Id.* at 642. At the first year anniversary date of the agreement, the City paid the invoice for technical services to be rendered during the following year. *Id.* Thereafter, for the following five years, the City of Columbia paid Software A.G.

for the technical services it provided. *Id.* After those five years, the City of Columbia did not pay, and Software A.G. sued the City of Columbia for breach of contract for failure to pay. *Id.* The City of Columbia claimed that "any agreement to extend technical services beyond [five years] was void because it would have extended the contract beyond the period of time authorized by section 2–461 of Article X of the Columbia Code of Ordinances." *Id.* at 642–43. Columbia's ordinance required "rebidding on contracts of more than five years duration and on contracts extended for longer than five years." *Id.* at 643. Software A.G. contended that the ordinance did not require the contract to be rebid after five years because each invoice for technical services constituted a new, independent, and enforceable one-year contract. *Id.*

This court rejected Software A.G.'s argument and refused to interpret the yearly invoices as new contracts to evade the intent and purpose of the city ordinance. The court held:

> If this Court were to interpret extensions or renewals of existing contracts as new one-year contracts, then the re-

tion. If the provision is for a renewal, the privilege granted is for the creation of a new tenancy by the execution of a new lease upon the expiration of the original term, while if the provision is for an extension, no new tenancy is created, but instead the provision of itself and alone continues the tenancy for the additional term upon the exercise of the option conferred. Suffice it to say that the courts of this state are inclined to disregard the distinction between a renewal and an extension unless the execution of a new lease is specifically required, in which event the distinction is recognized, at least if the terms and conditions of the new tenancy are to differ materially from those of the old. *Bussen*, 199 S.W.2d at 22. The City argues that nothing in the lease specifically requires the execution of a new lease. We disagree. The

lease clause says specifically that, "[a]t the end of the Lease Term, Lessee shall be given the opportunity to lease the Premises[.]" In *Bussen*, the court found that the language used in that case where the lessor agreed " 'to lease' [the] premises to the lessee at the expiration of the term for a like number of years and at the same rates and provisions as expressed in the original lease, it would appear that the covenant was technically one for a renewal as distinguished from an extension." *Id.* The *Bussen* court concluded. "The agreement 'to lease' evidently contemplated the execution of a new lease[.]" *Id.* The same is true in the case. The lease clause contemplates a lease renewal with the execution of a new lease for a new term rather than an extension of the original term of the lease as the City suggests.

quirement of rebidding could be avoided ad infinitum by simply labeling each extension as if it were a new contract. Such an interpretation of [the city's ordinance] would be nonsensical for it would undermine the purpose for which the section was enacted, effectually rendering that section a nullity.

*Id.* at 644.

The *Software* case is distinguishable. The City of Columbia's ordinance provided:

No contract for the provision of any service, supply, material or equipment shall be let for a period to exceed five (5) years, nor shall any contract for the provision of any services, materials, supplies or equipment be extended for a period in excess of five (5) years without an opportunity for public bidding or a request for proposals[.]

*Id.* at 643 (emphasis omitted). The ordinance clearly provided that no contract for services could exceed five years and that no contract for services could be extended for a period in excess of five years. Thus, the *Software* court found that the unpaid invoice was "simply an offer to extend the 1985 Agreement" and any acceptance of that offer "would have been void and unenforceable against the City, for it would have extended the contract beyond the five

year limitation stated in [the city ordinance]." *Id.*

Section 82 of the City Charter in this case, however, merely states that contracts for leases "may be made for a term not exceeding fifty (50) years." Section 82 says nothing regarding renewals of leases. It merely says that a contract for a lease may not exceed 50 years. To interpret the ordinance as the City suggest would result in the City never being able to give a lessee the option to renew a lease if a lessee had already leased the property for 50 years. We do not find such an intent in the City's ordinance.

As a matter of law, given the plain language of the renewal provision, the option to renew clause in the lease would not violate section 82 of the City Charter because the renewal would not result in a lease longer than 50 years.[8]

■ In its second point relied on, the City contends that, even if the clause is a valid option, the circuit court erred as a matter of law when it declared that the lease gave KCACS a perpetual option to renew the lease.[9] We agree.

■ "Missouri courts 'are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation.'" *Armstrong Business Servs., Inc. v. H & R Block*, 96

---

8. The circuit also declared that, even if the renewal provision were construed as creating a lease longer than 50 years, the renewal provision would be valid under section 432.070 because it is expressly authorized by Missouri statute, in particular sections 305.210 and 305.270, RSMo 2000. Given that we have concluded that there has been no violation of section 82 of the City Charter, it is unnecessary for us to address whether section 432.070 permits the City to make leases agreements of airport property, pursuant to sections 305.210 and 305.270, beyond 50 year terms

9. To the extent that KCACS asserts that this issue should not be considered by this court because the City did not raise any arguments with respect to perpetual renewals at the circuit court, we are not persuaded. KCACS raised the issue concerning the perpetuity of the lease in it suggestions in support of its motion for summary judgment. As the moving party, KCACS had the burden to establish, based on the undisputed facts, that as a matter of law, the alleged renewal is a perpetual renewal. *ITT Commercial*, 854 S.W.2d at 378. As we discuss above, KCACS did not establish that as a matter of law the renewal option is a perpetual option to renew.

S.W.3d 867, 875 (Mo. App. 2002) (quoting *Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262, 270 (1940), *overruled in part by Novak v. Baumann*, 329 S.W.2d 732 (Mo. 1959)). " '[A] renewal of the lease for all time to come is to create a perpetuity, which is against the policy of the law and which it does not favor[.]' " *Drake v. Bd. Of Educ. of St. Louis*, 208 Mo. 540, 106 S.W. 650, 652 (1907) (citation omitted). "A contract will not be construed to confer a right or impose an obligation in perpetuity unless the language of the contract compels such construction." *Armstrong*, 96 S.W.3d at 875; *Superior Concrete Accessories, Inc. v. Kemper*, 284 S.W.2d 482, 490 (Mo. 1955). "The intention to create a perpetual contract must be unequivocally expressed." *Armstrong*, 96 S.W.3d at 875. A lease in perpetuity will not be found " 'unless it appears from the covenant in the lease by express terms or clearly by implication that plaintiffs are entitled to have the lease renewed for all time to come[.]' " *Drake*, 106 S.W. at 652 (quoting *Diffenderfer v. Bd. of President, etc., of St. Louis Pub. Schools*, 120 Mo. 447, 25 S.W. 542, 544 (1894)). Thus, "[b]ecause the law discourages perpetuities, and does not favor covenants for continued renewals, 'a covenant which does not plainly imply or express a perpetual renewal will not be construed to give this right.' " *Kilbourne v. Forester*, 464 S.W.2d 770, 773 (Mo. App. 1970) (citations omitted).

The circuit court found that the language of the lease in this case implied a right of perpetual renewal. In particular, the circuit court found that these things in the lease implied a right of perpetual renewal: (1) the rent escalation provision applied indefinitely to ensure that the rental rate kept pace with fair market value no matter how long the tenancy lasts; (2) the parties' agreement established that KCACS would be given the opportunity to continue its tenancy on the leasehold as long as it was willing to meet the financial terms of the lease; and (3) other provisions in the lease indicated that the parties' agreement was designed and intended to adapt to changing circumstances at the airport no matter how far in the future they occurred.

Contrary to what the circuit court declared, the rent escalation provision in the lease applied throughout the lease term and did not plainly imply a perpetual lease. The original lease merely said that the ground rentals were "subject to renegotiation and change ... on the fifth (5th) anniversary of the commencement of the term hereof and at the end of each subsequent five-year period thereafter." The Fourth Amendment to lease amended this provision by stating: "To reflect the fair market rental of the Leased Premises, ground rent will be adjusted beginning January 1, 2016 and each year thereafter, based on the annual percentage change in the Consumer Price Index for All Urban Consumers ('CPI–U')." These provisions imply nothing about the lease continuing in perpetuity.

As noted previously, the lease clause at issue in this case states: "At the end of the Lease Term, Lessee shall be given the opportunity to lease the Premises at the then fair market rental rate or the rental rate which has been offered to the City by another party, whichever is higher." "The renewal provision of the lease between these parties is in general terms; it contains none of the language customarily used to express an intention for perpetual renewals, and certainly none can be implied." *Kilbourne*, 464 S.W.2d at 773.

Moreover, to the extent that the circuit court relied on other provisions within the lease to declare that the lease implied a right of perpetual renewal, we find no such implication. The circuit court found that

the use of the lowercase "term" throughout the lease was "a deliberately generic reference that signifie[d] the parties' intent for the rights and obligations in the Lease to run not only through the initial 30–year 'Lease Term,' but also through the 'term' of any lease renewal that is invoked by KCACS." The circuit court also found that the lease included "reservations of rights allowing the City to address future operational concerns that might arise at the Airport, as well as provisions requiring KCACS to comply with future changes in applicable laws and regulations and to agree to certain modifications of the Lease that might be required for receipt of federal airport improvement funds." The circuit court concluded that "[t]he flexibility built into the Lease reflect[ed] the parties' intent to have a workable agreement lasting longer than the initial 30–year term." Although these provisions may show that the parties intended the agreement to last longer than the initial 30–year term, these provisions do not "plainly imply or express a perpetual renewal[.]" *Kilbourne*, 464 S.W.2d at 773.

When a lease renewal provision is stated in general terms like the lease clause in this case, we will construe it "as authorizing but one renewal of all the terms of the old lease except that of the option of renewal itself." *Id.* We, therefore, reverse the circuit court's grant of summary judgment to KCACS to the extent that it declared that the renewal provision granted KCACS a right to renew the lease perpetually and remand for the circuit court to enter judgment stating that any right of renewal by KCACS is for one additional term only.

■ In its third point relied on the City contends that the circuit court erred in awarding attorneys' fees to KCACS. In particular, the City contends that the circuit court had no authority to award attorneys' fees because KCACS failed to show that special circumstances justified an award of attorneys' fees.

■ In regard to awards for attorneys' fees, Missouri follows the American Rule, which provides that, "absent statutory authorization or contractual agreement, with few exceptions, each litigant must bear his own attorney's fees." *David Ranken, Jr. Tech. Inst. v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991) (*overruled on other grounds by Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907, 911 (Mo. banc 1997)). For declaratory judgment actions, section 527.100, RSMo 2000, authorizes circuit courts to award "costs" in an amount the court deems "equitable and just." *Smith v. City of St. Louis*, 395 S.W.3d 20, 26 (Mo. banc 2013). The Missouri Supreme Court, however, has declared that the term "costs" does not automatically include attorneys' fees but that "costs" may include attorney's fees when there are "special circumstances." *Id.* This "special circumstances" exception to the American Rule, however, is narrowly construed and strictly applied. *Id.*; *Washington Univ.*, 801 S.W.2d at 469.

At the end of the circuit court's summary judgment order and judgment, the circuit court invited KCACS to "submit further briefing on the issue of whether special circumstances support[ed] an award of attorneys' fees in this case, and if so, what amount of attorneys' fees should be awarded." In response, KCACS filed a motion for award of attorneys' fees and costs with suggestions in support, making its argument as to the "special circumstances" that existed to support an award of attorneys' fees. KCACS also included affidavits, which outlined the hourly rates of KCACS's attorneys, the hourly rates of paralegal services, the total billable hours, the total amount of fees in the amount of $66,196.00, and the total amount of litiga-

tion expenses in the amount of $3,248.80.[10] In response to KCACS's motion, the City filed a memorandum in opposition to KCACS's motion for attorneys' fees, and, thereafter, KCACS filed reply suggestions in support of its motion. On May 13, 2016, the circuit court, without a hearing and a presentation of any evidence, issued an order awarding attorneys' fees to KCACS. In its order the circuit court stated:

> The Court is familiar with the record in the case and has considered the parties' submissions. Taking into account all of the circumstances, the Court finds that the Motion should be granted.
>
> . . .
>
> Here, based on the facts set forth in the Court's prior Order and Judgment and discussed at length in KCACS' papers, the Court finds special circumstances for the award of attorneys' fees stemming from the lack of substantial legal grounds for the City's position, the improper interference with KCACS' property rights, the shifting position of the City on the meaning and interpretation (if any) to be given to the disputed renewal provision of the Lease, and the apparent financial motivation for the City's action.

We find that we do not have a sufficient factual basis to determine whether special circumstances existed to warrant an award of attorneys' fees in this case. The merits of this action were disposed of through the grant of KCACS's motion for summary judgment. Given the limited facts that were uncontroverted in the summary judgment proceeding, we do not believe that the circuit court had before it sufficient facts for it to declare that special circumstances existed to award attorneys' fees to KCACS. We, therefore, reverse the circuit court's award granting KCACS attorneys'

fees and remand for further proceedings to determine whether special circumstances existed, giving the parties the opportunity to present evidence. We also note that KCACS filed a motion for attorneys' fees on appeal. On remand, if the circuit court finds that special circumstances exist, it shall also determine the amount of the attorneys' fees on appeal.

## Conclusion

We affirm the circuit court's judgment granting summary judgment in favor of KCACS, finding that, as a matter of law, the option to renew clause in the lease would not violate section 82 of the City Charter because the renewal would not result in a lease longer than 50 years. We also affirm the circuit court's denial of the City's cross-motion for summary judgment. We reverse the circuit court's grant of summary judgment to KCACS to the extent that it declared that the renewal provision granted KCACS a right to renew the lease perpetually and remand for the circuit court to enter judgment stating that any right of renewal by KCACS is for only one additional term. Finally, we reverse the circuit court's award granting KCACS attorneys' fees and remand for further proceedings to determine whether special circumstances existed, giving the parties the opportunity to present evidence. On remand, if the circuit court finds that special circumstances exist, it shall also determine the amount of the attorneys' fees on appeal.

All concur.

---

10. The City did not dispute the amount of    attorneys' fees and costs requested by KCACS.