IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 K.C. AIR CARGO SERVICES, INC., )
 )
 Respondent, )
 WD84195
 v. )
 )
 OPINION FILED:
 )
 December 21, 2021
 CITY OF KANSAS CITY, MISSOURI, )
 )
 Appellant. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Charles H. McKenzie, Judge

 Before Division One: W. Douglas Thomson, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 The City of Kansas City, Missouri, appeals the grant of summary judgment in favor of

Kansas City Air Cargo Services (KCACS) on both KCACS’s petition for declaratory judgment

and City’s counterclaim for declaratory judgment. Both parties sought declaratory judgments

regarding the construction of a contract to renew a lease wherein KCACS rented a portion of

City-owned real estate at the Kansas City International Airport. The entire dispute revolves around

the amount of rent due under the renewed contract. City raises four points on appeal, with the first

three challenging the grant of summary judgment on KCACS’s petition and the final point

challenging the grant of summary judgment on City’s counterclaim. Because all of City’s points
can be resolved under the doctrine of collateral estoppel, we address them together and affirm the

judgment below.

 Background

 KCACS and the City are parties to a lease for a tract of real property owned
 by the City and located at the Kansas City International Airport.[] The original lease
 was entered into on June 18, 1986, but has been amended four times: First
 Amendment dated September 15, 1987; Second Amendment dated December 28,
 1987; Third Amendment dated December 16, 1994; and Fourth Amendment dated
 January 1, 2015. The lease permitted KCACS to use the leased premises to
 construct air cargo facilities, including a building and aircraft apron. According to
 the lease, KCACS desired to lease the land to construct “certain buildings, facilities
 and improvements described as the Air Cargo Terminal” “for use by others.”

 As a tenant, KCACS constructed substantial improvements on the property,
 including a single-story shipping warehouse approximately 70,000 square feet in
 size and an abutting air cargo apron approximately 500,000 square feet in size.[]
 KCACS acts a[s] sub-landlord on the leasehold, renting warehouse space to
 subtenants.

K.C. Air Cargo Servs., Inc. v. City of Kansas City, 523 S.W.3d 1, 3 (Mo. App. W.D. 2017).

 The base term of the lease was for thirty years, beginning on October 1, 1987. Id. The

lease also provided, “At the end of the Lease Term, Lessee shall be given the opportunity to lease

the Premises at the then fair market rental rate or the rental rate which has been offered to the City

by another party, whichever is higher.” Id. The Fourth Amendment to the lease deleted former

Sections 401 and 407 of the original lease, dealing with “Ground Rent” and “Renegotiation of

Rentals,” respectively, and enacted new Sections 401 and 407, dealing with “Ground Rent” and

“Adjustment to Rentals,” respectively. New Section 401 provided:

 For the use and hire of the Leased Premises, the Lessee agrees to pay to the City on
 or before the first day of each month beginning January 1, 2015, rent in the amount
 of Twenty[-]Two and 37/100 Cents ($0.2237) per square foot per annum for each
 of the 372,000 square feet or a sum of Eighty[-]Three Thousand Two Hundred
 Sixteen Dollars and Forty Cents ($83,216.40) annually payable Six Thousand Nine
 Hundred Thirty[-]Four Dollars and Seventy Cents ($6,934.70) per month.

 2
New Section 407 provided:

 (1) To reflect the fair market rental of the Leased Premises, ground rent will be
 adjusted beginning January 1, 2016 and each year thereafter, based on the
 annual percentage change in the Consumer Price Index for All Urban
 Consumers (“CPI-U”). In no event will the annual adjustment result in Ground
 Rent being less than the amount charged during the prior year or more than
 2.5% above the amount charged during the prior year. The most recent
 available CPI-U as of December 15 of each year, calculated over the preceding
 twelve months, shall be used to adjust the Ground Rent for the next year.

 (2) CPI-U means the Consumer Price Index for All Urban Consumers for the U.S.
 City Average for All Items, 1982-84 = 100, or the successor of that index
 calculated on a calendar year basis and as published by the Bureau of Labor
 Statistics, U.S. Department of Labor.

 A dispute arose in 2015 regarding KCACS’s right to renew the lease, and KCACS filed a

declaratory judgment action against City, seeking “a declaration regarding the construction and

enforceability of the lease and the renewal option clause.” Id. at 4. KCACS argued that the

language in the original lease provided an option to renew, while City argued that the language

reflected merely a right of first refusal and that, if the clause were an option to renew, it was void

because (1) it lacked essential terms (specifically, City argued there were no means for determining

rental amount insofar as the renewal would encompass both the land and the improvements), and

(2) it violated a 50-year lease term limitation set forth in section 82 of the City’s Charter. Id. at 4.

 The circuit court determined that the original lease granted KCACS a perpetual option to

renew on the same terms and conditions as the existing lease. The circuit court further determined

that the rental rate was set by Section 407 of the Fourth Amendment to the lease. The circuit court

rejected City’s arguments that the renewal provision was void, determining first that it did not

violate City’s Charter and second that it contained all essential terms. The circuit court specifically

rejected City’s argument that the renewal provision was unenforceable because it failed to include

improvements in addition to the land, calling the argument “specious.” City based its argument

 3
on a change in the definition of “Leased Premises” from the Second Amendment to the Fourth

Amendment, but the circuit court determined that, “[r]egardless of who owns title to the

improvements on the Leasehold, the Lease provides that KCACS has the right to full use of those

improvements at all times throughout its tenancy.” The court definitively stated, “the Fourth

Amendment [to the Lease] contemplates that the rent paid by KCACS is for the full use of the

Leasehold and all improvements.”

 City appealed to this court, arguing, in part, that the circuit court erred in determining that

the lease gave KCACS a perpetual option to renew and that renewal did not violate City’s Charter’s

prohibition on leases exceeding fifty years. K.C. Air Cargo Servs., Inc., 523 S.W.3d at 3. This

court upheld the circuit court’s ruling that the lease gave KCACS an option to renew, that renewal

was to be on the same terms and conditions as the existing lease, and that renewal did not violate

City’s Charter. Id. at 7-10. We reversed, however, the circuit court’s determination that the lease

allowed for renewals in perpetuity, instead holding that it allowed for only one renewal term. Id.

at 12.

 Following this court’s decision in K.C. Air Cargo Services, KCACS attempted to exercise

its option to renew by presenting City with a renewal contract, containing the same terms and

conditions as the prior amended lease, but omitting any option to renew and updating the rental

rate provided in Section 401 to reflect the current date. City refused to execute the new lease,

arguing that an appraisal was required in order to determine the rental rate; specifically, City

claimed that the renewal provision required the parties to determine the “then fair market value,”

which now included both land and improvements, and therefore needed an appraisal for

determination. In response, KCACS filed the underlying declaratory judgment action, seeking the

following declarations: (1) KCACS properly exercised its renewal option; (2) the proposed new

 4
lease provided to City by KCACS is in proper form; and (3) City is required to execute the new

lease, which will effectuate a lease renewal for a 30-year term on the same terms and conditions

as the amended lease. City filed a counterclaim, seeking the following declarations: (1) title to

the leasehold improvements automatically vested in the City no later than October 1, 2017; (2) the

Premises under any renewal term includes the ground and any leasehold improvements; and (3) the

“then fair market rental rate” of the Premises that KCACS is required to pay under any renewal

term is the fair market rental rate of both the ground and any leasehold improvements as of

October 1, 2017, to be adjusted each year thereafter under Section 407 of the Fourth Amendment.

 Both parties sought summary judgment on their respective claims. The circuit court

granted KCACS’s motion and denied City’s. The circuit court reasoned that “[t]he issue presented

for determination by this Court has already been litigated and decided,” and it referred to the prior

circuit court judgment and this court’s prior decision in K.C. Air Cargo Services. City appeals.

 Standard of Review

 “A circuit court’s grant of summary judgment is subject to de novo review on appeal.”

Holmes v. Steelman, 624 S.W.3d 144, 148 (Mo. banc 2021). We will affirm the grant of summary

judgment “when the moving party has established a right to judgment as a matter of law ‘on the

basis of facts as to which there is no genuine dispute.’” Id. (quoting Newton v. Mercy Clinic E.

Cmtys., 596 S.W.3d 625, 628 (Mo. banc 2020)). We review “the record in the light most favorable

to the party against whom judgment was entered.” Id. (quoting Newton, 596 S.W.3d at 628).

 Analysis

 City raises four points on appeal. First, it argues that the circuit court erred in applying

issue preclusion when granting KCACS’s motion for summary judgment because, City argues,

issue preclusion was inapplicable to the interpretation of the lease’s language of “the then fair

 5
market rental rate.” Second, City argues that the circuit court erred in granting KCACS’s motion

for summary judgment because there was a genuine issue of material fact regarding the rental rate

under the lease. Third, City argues that the circuit court erred in granting KCACS’s motion for

summary judgment because City did not acquiesce to the rental rate. Finally, City argues that the

circuit court erred in granting summary judgment in favor of KCACS on City’s counterclaim

insofar as KCACS failed to negate any elements of City’s declaratory judgment action. Because

all of City’s claims can be resolved through application of issue preclusion, we address them

together.

 The doctrine of issue preclusion (also known as collateral estoppel) “precludes re-litigation

of an issue previously decided and incorporated into an earlier judgment.” Sexton v. Jenkins &

Assocs., Inc., 152 S.W.3d 270, 273 (Mo. banc 2004). In other words, “when an issue of ultimate

fact has been determined by a valid judgment, it may not again be litigated between the same

parties.” King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,

821 S.W.2d 495, 500 (Mo. banc 1991). Issue preclusion applies when (1) “the issue decided in

the prior adjudication was identical to the issue presented in the present action; (2) . . . the prior

adjudication resulted in a judgment on the merits; and (3) . . . the party against whom collateral

estoppel is asserted was a party or in privity with a party to the prior adjudication.”1 Id. (emphasis

in original). Here, City does not contest the existence of a prior adjudication on the merits, nor

does it contest that it was a party to the prior adjudication. Thus, the only dispute is whether the

 1
 “A fourth factor, on which there is no consensus, is whether the party against whom collateral estoppel is
asserted had a full and fair opportunity to litigate the issue in the prior suit.” King Gen. Contractors, Inc. v.
Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 500 (Mo. banc 1991). This factor appears
to apply “only when there exists a lack of mutuality, i.e., where the person seeking to invoke collateral estoppel is not
himself bound by the prior adjudication.” Land Clearance for Redevelopment Auth. of St. Louis v. U.S. Steel, 911
S.W.2d 685, 688 n.2 (Mo. App. E.D. 1995). Here, we are not dealing with non-mutual collateral estoppel, as both
KCACS and City were the parties to the prior litigation and both are, therefore, bound by it.

 6
issue in this case (calculation of the rental rate) is identical to the issue decided in the prior

adjudication. We hold that it is.

 In determining whether identity of the issues exists between the prior and current litigation,

“[s]pecific findings are not required to have the effect of precluding re[-]litigation of an issue.”

Land Clearance for Redevelopment Auth. of St. Louis v. U.S. Steel, 911 S.W.2d 685, 688 (Mo.

App. E.D. 1995). “A finding that is implicit in a judgment can also have this effect.” Id. So long

as “[a]n issue . . . has been unambiguously, necessarily and implicitly determined by a judgment[,

it] cannot be litigated again.” Sangamon Assocs. Ltd. v. Carpenter 1985 Fam. P’ship Ltd., 280

S.W.3d 737, 744 (Mo. App. W.D. 2009) (quoting Carr v. Holt, 134 S.W.3d 647, 650 (Mo. App.

E.D. 2004)).

 Here, the primary issue in dispute is the calculation of the rental rate under the renewed

contract. KCACS argues that the rental rate is determined by the same method and in the same

manner as provided in the Fourth Amendment to the original lease. City argues, however, that the

method and manner provided by the Fourth Amendment apply only after an appraisal establishes

the existing fair market value of the leased premises. The basis for City’s argument is two-fold:

(1) the renewal provision provided that KCACS’s option to renew would be based on “the then

fair market rental rate”; and (2) title to both the land and improvements was to vest in City upon

termination of the agreement. City argues that title to the improvements now belongs to City,

given the termination of the original 30-year lease, and, because of this development, only an

appraisal can establish the fair market rental rate for both the land and improvements.

 There are two problems with City’s argument, both of which were addressed in the prior

litigation. First, when City originally contested KCACS’s right to renewal, it argued that a renewal

would lack essential terms—specifically a determined fair market value for computing rent in light

 7
of the fact that, at the outset of a renewed contract, City would own both the land and the

improvements. The circuit court in the prior litigation directly addressed this argument, called it

specious, and determined that “the Fourth Amendment [to the Lease] contemplates that the rent

paid by KCACS is for the full use of the Leasehold and all improvements.” The second problem

is that, on appeal, this court held that KCACS had the right to a single renewal “on the same terms

and conditions” as the amended lease. K.C. Air Cargo Servs., 523 S.W.3d at 9. We then noted

that the “fair market rental rate” was determined by Section 407 of the Fourth Amendment.

Id. at 7 n.4. In arguing that “fair market rental rate” is to be determined in any way other than as

provided in Section 407 of the Fourth Amendment, City is arguing for different terms and

conditions to apply to the renewal contract. This court very plainly held in the prior litigation that

the renewal was to be on the “same terms and conditions.”

 Contrary to City’s argument, we agree with the circuit court below that the issues raised

here were already addressed and determined adversely to City in the prior litigation. Therefore,

the court below did not err in applying issue preclusion when granting KCACS’s motion for

summary judgment. City’s Point I is denied.

 City’s Point II argues that summary judgment was inappropriate because there was a

genuine issue of material fact as to the rental rate for the leased premises. But the renewal contract

very plainly lays out the rental rate to be applied, using the same terms and conditions as the prior

lease. The fact that City seeks to interpret the renewal provision contrary to the prior judgments

does not create a genuine issue of material fact precluding the entry of summary judgment. See

Clark v. AT&T Mobility Servs., L.L.C., 623 S.W.3d 197, 202 (Mo. App. W.D. 2021) (quoting

Daugherty v. City of Md. Heights, 231 S.W.3d 814, 818 (Mo. banc 2007)) (“A genuine issue that

will prevent summary judgment exists where the record shows two plausible, but contradictory,

 8
accounts of the essential facts and the genuine issue is real, not merely argumentative, imaginary,

or frivolous.” (emphasis added)); TCN Invs., LLC v. Superior Detail, 588 S.W.3d 245, 249 (Mo.

App. W.D. 2019) (“The interpretation of a contract, including a lease agreement, is a question of

law . . . .”). City’s Point II is denied.

 City’s Point III argues that summary judgment was improper because City did not

acquiesce to the rental rate identified in the renewal contract by accepting KCACS’s payments

based on the calculation identified in the renewal contract. This point, however, is moot in light

of our holding on Point I. Therefore, City’s Point III is denied.

 In its final point, City argues that the circuit court erred in granting KCACS’s motion for

summary judgment on City’s counterclaim insofar as KCACS failed to negate any elements of

City’s counterclaim for declaratory judgment. We disagree. The purpose of the declaratory

judgment act “is to settle and to afford [parties] relief from uncertainty and insecurity with respect

to rights, status and other legal relations.” § 527.120.2 “It certainly should not be resorted to or

applied in a case where the rights as asserted by the plaintiff had been settled and definitely

determined by the appellate courts in like cases contrary to her claim.” Koenig v. Koenig, 191

S.W.2d 269, 272 (Mo. App. 1945). “Therefore, where the petition, as here, fails to show any

uncertainty as to the pleader’s rights, a declaratory judgment proceeding has no place to fill.” Id.

Because the prior judgments conclusively established that the renewal contract was to be governed

by the same terms and conditions as the amended lease, and because the amended lease expressly

laid out how rent was to be calculated, there is no uncertainty with respect to City’s rights; they

have been settled and definitively determined. Accordingly, Point IV is denied.

 2
 All statutory cites are to the Revised Statutes of Missouri, as updated through the 2020 Cumulative
Supplement.

 9
 Conclusion

 The circuit court did not err in granting KCACS’s motion for summary judgment in favor

of KCACS’s declaratory judgment petition and against City’s counterclaim. The court’s

judgment is affirmed.

 Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Alok Ahuja, Judge, concur.

 10