**LVNV FUNDING, LLC, Respondent,**

v.

**Linda A. MAVAEGA, Appellant.**

**WD 80294**

Missouri Court of Appeals,
Western District.

OPINION FILED: August 29, 2017

Joshua C. Dickinson, Bryant T. Lamer and Kersten L. Holzhueter, Kansas City, MO, for respondent.

A.J. Stecklein, Kansas City, KS, for appellant.

Before Division Three: Alok Ahuja, Presiding Judge, Thomas H. Newton, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Linda Mavaega ("Mavaega") appeals from the trial court's entry of summary judgment in favor of LVNV Funding, LLC ("LVNV Funding") and from the trial court's denial of her motion for class certification. Mavaega asserts that the trial court erred in three respects: (1) in denying her motion for summary judgment and in granting LVNV Funding's motion for summary judgment on Mavaega's claim asserting LVNV Funding violated the Fair Debt Collection Practices Act ("FDCPA")[1]; (2) in denying her motion for class certification; and (3) in granting LVNV Funding's motion for summary judgment on its claim against Mavaega to collect a debt. We affirm.

## Factual and Procedural Background

In March 2012, Mavaega entered into a credit agreement with Credit One Bank, N.A. ("Credit One"). Credit One extended credit pursuant to the terms and conditions of the credit agreement. Mavaega, in exchange, agreed to pay Credit One for all amounts due resulting from the authorized use of the credit, including any interest and other charges due pursuant to the terms and conditions of the credit agreement. The terms and conditions of the credit agreement provided that interest would accrue at the rate of 23.9 percent.

Credit One issued Mavaega monthly periodic statements. The May 4, 2012 periodic statement indicated that Mavaega was required to make a minimum payment of $51.00 by May 28, 2012. Mavaega made no payments toward the account following the May 4, 2012 periodic statement, and Credit One recorded the first day of default as June 4, 2012. The December 4, 2012 periodic statement indicated that the account had a balance of $826.83 and warned that Mavaega's "account is scheduled to be charged off."[2] Credit One charged off the account on December 5, 2012.

In January 2013, LVNV Funding gained ownership of the account and has owned the account since that time.[3] From March 2013 to June 2014, LVNV Funding charged interest on the balance due on the account at a rate of 20 percent per annum. However, LVNV Funding then deducted the interest it had accrued during that time frame from the account balance. Thereafter, LVNV Funding began charging interest on the balance due on the account at the rate of 9 percent per an-

---

1. 15 U.S.C. section 1692 *et seq.*

2. Charging off delinquent accounts is a federal regulatory requirement. *See* Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903-01 (June 12, 2000).

3. In her third point on appeal, Mavaega asserts that summary judgment in favor of LVNV Funding on its claim against Mavaega to collect the debt owed on the account was improper because LVNV Funding failed to demonstrate that it held title to the debt. Mavaega's complaint centers on LVNV's failure to establish the account's chain of custody in its motion for summary judgment. We address the chain of custody issue in our discussion of Mavaega's third point on appeal, *infra*.

num. Pursuant to section 408.020,[4] creditors are allowed "to receive interest at the rate of nine percent per annum, when no other rate is agreed upon."

On October 21, 2014, LVNV Funding filed suit against Mavaega to collect $826.83, the amount outstanding on the credit account, plus interest from and after July 21, 2014. LVNV Funding did not seek to recover interest from the date of its acquisition of the credit account to July 21, 2014. Mavaega filed an answer and counterclaim on April 8, 2015. Mavaega's counterclaim alleged that LVNV Funding violated the FDCPA in three respects: (1) LVNV Funding assessed an interest rate not allowed by law or agreement; (2) LVNV Funding falsely stated the character, amount, or legal status of the debt; and (3) LVNV Funding communicated credit information which it knew or should have known to be false. Underlying Mavaega's counterclaim was her assertion that once Credit One charged off her account, no contractual interest could be assessed as a matter of law, and that LVNV Funding had nonetheless charged interest on the account at a rate in excess of Missouri's statutory rate.

Further, Mavaega's counterclaim sought an order certifying her suit as a class action, with the proposed class to include "[a]ll Missouri persons whose charged-off accounts were purchased by LVNV Funding LLC wherein LVNV reported a growing balance to a credit reporting agency with interest rate over 9% within one year of filing this class counterclaim." Mavaega filed a motion for class certification detailing why class certification was appropriate. Following briefing by the parties, the trial court denied Mavaega's motion seeking class certification because "Mavaega's proposed class definition is overly broad and, in its current state, does not allow for class certification."

LVNV Funding filed a motion for summary judgment on September 9, 2016. LVNV Funding argued that summary judgment in its favor and against Mavaega was appropriate on its affirmative claim to collect the debt owed by Mavaega, and on Mavaega's FDCPA counterclaim. With respect to the collection claim, LVNV Funding's motion for summary judgment argued that the uncontroverted facts established that Mavaega incurred the debt; that the debt was subject to a 23.9 percent contractual interest rate; that Mavaega failed to make payments when due; and that LVNV Funding is the current owner of the debt. LVNV Funding thus asserted that it was entitled to judgment in the sum of $826.83, plus statutory interest as pleaded in its petition, as a matter of law. LVNV Funding's motion for summary judgment also asserted that Mavaega's FDCPA counterclaim failed as a matter of law for two reasons. First, LVNV Funding argued that Credit One's failure to mail periodic statements to Mavaega did not prohibit the accrual of interest on the debt and that Credit One did not otherwise waive its right to collect interest on the debt. Second, LVNV Funding contended that Mavaega's FDCPA counterclaim relies entirely on LVNV Funding's alleged failure to comply with the Truth in Lending Act ("TILA")[5] and its implementing regulation, Regulation Z,[6] neither of which apply to LVNV Funding because LVNV Funding is not a "creditor" as defined by TILA.

Mavaega filed a response to LVNV Funding's motion for summary judgment.

---

4. All statutory references are to RSMo 2016 as supplemented unless otherwise indicated.

5. 15 U.S.C. section 1601 *et seq.*

6. 12 C.F.R. section 226.1 *et seq.*

With respect to LVNV Funding's collection claim, Mavaega argued that LVNV Funding is not entitled to summary judgment because it has not established a chain of title to the debt in question and because LVNV Funding sought damages in an amount that is unlawful. With respect to Mavaega's FDCPA counterclaim, Mavaega argued that LVNV Funding is not entitled to summary judgment because the uncontroverted facts established that LVNV Funding engaged in two violations of the FDCPA: (1) LVNV Funding attempted to collect a debt by threatening the accrual of interest at a rate greater than the statutory rate; and (2) LVNV Funding reported a balance on Mavaega's account to national credit bureaus that grew at a rate greater than that allowed by law or agreement. Both alleged violations depended on the truth of Mavaega's assertion that contractual interest of 23.9 percent could no longer be charged by Credit One or its assignee once Credit One charged off Mavaega's credit account in December 2012.

Mavaega filed her own motion for summary judgment on her FDCPA counterclaim. Mavaega's motion asserted that she was entitled to summary judgment because: (1) when LVNV Funding took possession of the account, it had no greater rights than that of Credit One; (2) Credit One's rights to collect against Mavaega were limited by TILA and Regulation Z, which limited the collection of interest to 9 percent (the statutory rate) once Credit One charged off Mavaega's account; and (3) LVNV Funding charged Mavaega in excess of 9 percent when it had no contractual or statutory right to do so because Mavaega's account was previously charged-off and periodic statements had ceased.

Following extensive briefing by the parties, the trial court denied Mavaega's motion for summary judgment on her FDCPA counterclaim, and granted LVNV Funding's motion for summary judgment both on its affirmative collection claim and in defense of the FDCPA counterclaim. The trial court explained its decision:

> The original creditor charged off its account with Linda Mavaega on 5 December 2012 when she had an outstanding balance of $826.83. LVNV Funding LLC was assigned Linda Mavaega's account on 31 January 2013. LVNV Funding LLC charged 20% interest on the account from March 2013 to June 2014, deducted same from the account for that time period, and beginning July 2014 charged 9% interest on the account. Once the original creditor charged off the account on 5 December 2012, the original creditor and any subsequent assignees were precluded from charging interest at the contractual rate. Pursuant to Section 408.020, creditors are allowed to receive interest at the rate of 9% per annum.

(Citation omitted.) The trial court thus found that LVNV Funding was limited to the recovery of interest at the statutory rate, and effectively found that the earlier assessment of a higher rate of interest did not violate the FDCPA because of the reversal of that charge.

Mavaega appeals.

## Standard of Review

The trial court's decision to grant summary judgment is one based on the pleadings, the record submitted, and the law. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). Thus, we need not defer to the trial court's determination. *Id.* Instead, we review the grant of summary judgment *de novo*, applying the same standard as the trial court in determining whether summary judgment was proper. *Id.*

Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

*Id.* at 452-53 (internal quotation marks and citations omitted).

The moving party's right to "judgment as a matter of law differs significantly depending upon whether the movant is a 'claimant' or a 'defending party.'" *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). If the moving party is a claimant, then the claimant "must establish that there is no genuine dispute as to those material facts upon which the claimant would have had the burden of persuasion at trial." *Id.* Thus, LVNV Funding had the burden in its motion for summary judgment on its collection claim against Mavaega to establish that there was no dispute as to the material facts necessary to establish the claim. Similarly, Mavaega had the burden in her motion for summary judgment on the FDCPA counterclaim against LVNV Funding to establish that there was no dispute as to the material facts necessary to establish the counterclaim.

 Where the moving party is a defending party, the right to judgment as a matter of law is determined differently. *Id.* [A] defending party may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery,

has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* LVNV Funding, as the party defending Mavaega's FDCPA counterclaim, had the burden on its motion for summary judgment to establish one of the following: (1) facts that negate any one of the elements of an FDCPA claim; (2) that Mavaega, after an adequate period of discovery, has not be able to produce and will not be able to produce evidence to support one of the elements of an FDCPA claim; or (3) that there are no genuine issues of material fact as to the existence of each of the elements necessary for one of LVNV's affirmative defenses.

### Analysis

Mavaega raises three points on appeal. We discuss the points separately.

### *Point One: FDCPA Counterclaim*

 In her first point on appeal, Mavaega argues that the trial court erred in granting LVNV Funding's motion for summary judgment on her FDCPA counterclaim and in denying Mavaega's motion for summary judgment on her FDCPA counterclaim. Mavaega asserts that, because the trial court correctly concluded that LVNV Funding was prohibited from charging interest at a rate in excess of the statutory rate, the trial court erred in concluding that, as a matter of law, there was no FDCPA violation. Mavaega argues that LVNV Funding could not "cure" charging interest at a rate greater than the statutory minimum by crediting the account the amount it overcharged. In other words, Mavaega claims that once an FDCPA violation occurs, it cannot be remedied. Thus,

according to Mavaega, the entry of summary judgment in favor of LVNV Funding was inappropriate, and instead summary judgment should have been entered in her favor.[7]

Mavaega's FDCPA counterclaim alleged that LVNV Funding engaged in three violations of the FDCPA: (1) LVNV Funding assessed interest at a rate not allowed by law or agreement in violation of 15 U.S.C. section 1692f(1); (2) LVNV Funding falsely represented the character, amount, or legal status of Mavaega's debt by threatening to assess contractual interest in violation of 15 U.S.C. section 1692e(2)(A); and (3) LVNV Funding communicated credit information known or which should have been known as false by reporting to a credit bureau that the balance of Mavaega's debt was growing at a rate greater than the statutory rate in violation of 15 U.S.C. section 1692e(8). Central to each of the alleged FDCPA violations is Mavaega's assertion that LVNV Funding did not have the right to charge an interest rate greater than the statutory rate. We disagree.

 Credit One was the original creditor. LVNV Funding purchased Mavaega's account in January 2013. When it did so, it stepped into Credit One's shoes. " 'An assignee steps into the shoes of its assignor; it acquires no greater rights than those held by the assignor at the time of the assignment.' " *Hellmann v. Sparks*, 500

S.W.3d 252, 268 (Mo. App. S.D. 2015) (quoting *Adams v. Cossa*, 294 S.W.3d 101, 105 (Mo. App. E.D. 2009)). "The only rights or interest an assignee acquires are those the assignor had at the time the assignment was made." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 128 (Mo. banc 2010). As such, LVNV Funding had only those rights that Credit One, as the original creditor and assignor, had. In other words, LVNV Funding was entitled to collect interest only to the extent that Credit One was entitled to collect interest at the time it assigned Mavaega's account.

Mavaega argues that Credit One no longer had the right to charge interest at the contract rate of 23.9 percent once it charged off her account in December 2012. Mavaega argues that once Credit One charged off her account, it was only entitled to assess interest at Missouri's statutory rate of 9 percent. Mavaega thus argues that LVNV Funding was not authorized to assess interest at the rate of 20 percent from March 2013 through June 2014 (an amount that was less than the contract rate of interest but more than the statutory rate of interest). Mavaega's arguments require us to analyze Credit One's right under TILA to continue to assess contractual interest on the balance due on Mavaega's account from and after the point in time the account was charged off.[8]

---

7. Ordinarily, "an order denying a motion for summary judgment is an interlocutory order and is not reviewable on appeal." *K.C. Air Cargo Servs., Inc. v. City of Kansas City*, No. WD79786, 523 S.W.3d 1, 5, 2017 WL 892548, at *3 (Mo. App. W.D. Mar. 7, 2017). "However, 'the overruling of a party's motion for summary judgment can be reviewed when its merits are intertwined completely with a grant of summary judgment in favor of an opposing party.' " *Id.* (quoting *Bob DeGeorge Assocs., Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 596-97 (Mo. banc 2012)). Here, at issue

in both Mavaega's motion for summary judgment on the FDCPA counterclaim, and LVNV Funding's motion for summary judgment on the FDCPA counterclaim, is whether LVNV Funding had a right to charge an interest rate that exceeded the statutory rate. Thus, because the issues presented in Mavaega's motion for summary judgment on the FDCPA counterclaim and LVNV Funding's motion for summary judgment defending the FDCPA counterclaim are so intertwined, we review Mavaega's claim of error in the denial of her motion for summary judgment.

Under TILA, "a creditor is required to send periodic statements to a debtor at the end of each billing cycle where there is an outstanding balance or where a finance charge was imposed." *Kirk v. Lvnv Funding LLC*, No. 14-00516-CV-W-DW, 2014 WL 12540481, at *2 (W.D. Mo. Oct. 29, 2014) (citing 15 U.S.C. section 1637(b)). The creditor may be relieved of that requirement, however, if one of four circumstances exists: (1) the creditor deems the account uncollectible; (2) delinquency collection proceedings have been instituted; (3) the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account; or (4) furnishing the statement would violate federal law. 12 C.F.R. section 226.5(b)(2)(i).

It is uncontested that Credit One sent Mavaega periodic statements through December 2012, the month during which it charged off Mavaega's account. It is uncontested that Credit One sent no further periodic statements to Mavaega, and that it sold the account almost immediately after it was charged off. And it is uncontested that LVNV Funding, which acquired the account in January 2013, did not thereafter send Mavaega periodic statements and had no legal obligation to do so as it was not subject to TILA.[9]

The obligation to send periodic statements is not directly tied to a creditor's right to charge contractual interest on an account. However, Mavaega argues that, because Credit One ceased sending periodic statements after it charged off her account, it must be presumed that it did so pursuant to 12 C.F.R. section 226.5(b)(2)(i), and in particular, the provision permitting cessation of periodic statements "if the creditor has charged off the account in accordance with loan-loss provisions *and will not charge any additional fees or interest on the account*." (Emphasis added.) In other words, Mavaega extrapolates that because Credit One charged off her account, it must have agreed not to charge any additional fees or interest otherwise permitted by the credit agreement, thus explaining Credit One's failure to send out further periodic statements. Mavaega claims that "[t]he legal tradeoff for allow-

---

**8.** LVNV Funding argues in its brief that Mavaega's FDCPA counterclaim failed because it relied on TILA, which does not apply to LVNV Funding because it is not a "creditor," as defined by TILA. LVNV Funding is correct that, as an assignee of Mavaega's account, it is not a "creditor." "Creditor" is defined by TILA as:

[A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit

plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors.

15 U.S.C. section 1602(g); *see also Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1120 (7th Cir. 2003) (holding that purchasing open-ended credit card accounts does not render a company a "creditor" as defined by TILA). Though we agree that LVNV Funding is not a "creditor" subject to TILA, Mavaega has not argued that LVNV Funding violated TILA. Instead, she argues that because Credit One (which was subject to TILA) could not charge contractual interest, LVNV Funding was similarly bound. The relevance of TILA to this case is limited to determining the rights that Credit One, as assignor, conveyed to LVNV Funding, as assignee.

**9.** *See supra* note 8.

ing Credit One Bank and its successors to stop sending periodic statements is its obligation to stop charging [Mavaega] contractual interest." [Appellant's Brief, p. 18]

There are several problems with Mavaega's contention. First, Credit One's successor, LVNV Funding, was not obligated to comply with TILA, and thus had no independent obligation to send Mavaega periodic statements subject to being relieved of that requirement by one of the circumstances described in 12 C.F.R. section 226.5(b)(2)(i).[10] Second, it is uncontested that Credit One sold Mavaega's account almost immediately after it was charged off, calling into question whether it failed to send any periodic statements, having relinquished itself of ownership of the account. Third, settled law establishes that a creditor's charge off of an account is not, in and of itself, sufficient to permit the inference that the creditor has agreed to waive the right to assess additional fees or interest otherwise permitted by the credit agreement thereafter.

In *Stratton v. Portfolio Recovery Associates, LLC*, 171 F.Supp.3d 585 (E.D. Ky. 2016), the court considered whether cessation of periodic statements following the charge off of an account precluded the accrual of contractual interest as a matter of law. The debtor argued that, because the creditor charged off her credit card account and then halted the assessment of interest and ceased sending periodic statements, the creditor waived its right to collect contractual interest. *Id.* at 599. The court first recognized that, under the law of the state governing the contract, "[w]aiver is an intentional relinquishment of a known right," whether done expressly or implicitly by a party to the contract. *Id.* The court noted that charging off delinquent accounts is a regulatory requirement pursuant to the Uniform Retail Credit

Classification and Account Management Policy, not a voluntary action of the creditor. *Id.* at 600 (citing 65 Fed. Reg. 36903-01 (June 12, 2000)). Thus, the fact that the creditor charged off the account was not alone enough to mandate a finding of waiver. *Id.* The court further recognized that " 'periodic statements (or lack thereof) add nothing to the inquiry into whether [the creditor] applied interest' to [the debtor's] account." *Id.* (quoting *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 543 (N.D. Ill. 2012)).

The *Stratton* court recognized that a previous court had found that original creditors waive contractual interest when:

(i) the creditors charged off the accounts; (ii) the agreements between the creditors and the debt collectors specified that there was no "post charge-off interest" included in the "unpaid balance" that was sold to the collectors; and (iii) there was testimony by the original creditors that they did not impose interest post charge-off to avoid the periodic statement requirement.

*Id.* at 601 (citing *McDonald Asset Acceptance LLC*, 296 F.R.D. 513, 524-25 (E.D. Mich. 2013)). In *Stratton*, the original creditor charged off the account. *Id.* However, the agreement between the original creditor and the debt collector (or assignee of the debt) did not demonstrate an intention to waive contractual interest. *Id.* Instead, the agreement acknowledged that "interest 'may have accumulated after the Account's charge-off date.' " *Id.* Further, there was no evidence that the original creditor had a policy to waive contractual interest in order to avoid TILA's periodic statement requirement. *Id.* The *Stratton* court concluded that charging off an account, halting imposition of interest, and ceasing sending periodic statements were

**10.** *See supra* note 8.

insufficient evidence to demonstrate, as a matter of law, that the original creditor waived its right to collect contractual interest. *Id.* at 602. Thus, the debt collector did not seek to collect interest that was waived by its assignor, the original creditor. *Id.*

The *Stratton* court is not alone in its conclusion that charging off an account in combination with ceasing periodic statements is insufficient to establish an intentional waiver of the right to assess contractual interest. *See Bunce v. Portfolio Recovery Assocs., LLC*, No. 14-2149-JTM, 2014 WL 5849252, at *2 (D. Kan. Nov. 12, 2014) (holding that waiver is not implied by the fact that accounts were charged off and the original lenders ceased sending periodic statements because charging off delinquent accounts is a federal regulatory requirement and because whether the original lender must send monthly statements is determined by federal law); *Willingham v. Midland Funding, LLC*, No. CIV-13-748-D, 2014 WL 12600798, at *5 (W.D. Okla. Mar. 11, 2014) (holding that the creditor did not waive its contractual right to be paid interest on a debt when the creditor charged off an account and ceased periodic statements).

■■■■ Importantly, these cases recognize that the cessation of periodic statements after an account is charged off is not sufficient as a matter of law to require or permit the inference that periodic statements ceased because the account was charged off. Instead, the decision to cease sending periodic statements could as easily have been a result of the creditor's determination that the account was "uncollectible." 12 C.F.R. section 226.5(b)(2)(i) (identifying the creditor's determination that the account is "uncollectible" a basis for being relieved of the obligation to send

periodic statements under TILA); *see Bunce*, 2014 WL 5849252, at *1 ("While such a cessation [of periodic statements] *may* occur when a lender waives further interest charges, it may also happen if the creditor decides the debt is uncollectible. . . ."). And because charge off of an account alone is not enough to relieve a creditor of the obligation to send periodic statements pursuant to 12 C.F.R. section 226.5(b)(2)(i) *unless* the creditor has contemporaneously agreed that it "will not charge any additional fees or interest on the account," a debtor relying on the charge off of an account to contend that contractual interest has been waived must separately and independently establish waiver in accordance with state law. *See Bunce*, 2014 WL 5849252, at *2 (concluding that the original creditor charging off the accounts and ceasing monthly statements fail to constitute a plausible basis for inferring waiver so that the debtor must submit additional evidence to prove that the original creditor took voluntary actions demonstrating an intention to waive contractual interest); *see also Ruge v. Delta Outsource Group, Inc.*, No. 15CV10865, 2017 WL 959017, at *4 n. 6 (N.D. Ill. Mar. 13, 2017) (supporting that charge off of debt and ceasing periodic statements is not alone sufficient to establish waiver of interest); *Wilder v. J.C. Christensen & Associates, Inc.*, No. 16CV1979, 2016 WL 7104283, at *5-6 (N.D. Ill. Dec. 6, 2016) (supporting that charge off of debt and ceasing periodic statements is not alone sufficient to establish waiver of interest).[11]

■■■■ Missouri defines waiver as "an intentional relinquishment of a known right." *Star Dev. Corp. v. Urgent Care Assocs., Inc.*, 429 S.W.3d 487, 494 (Mo. App. W.D.

11. In *Haney v. Portfolio Recovery Associates L.L.C.*, 837 F.3d 918, 925 (8th Cir. 2016), "[t]he parties agree[d] that when an original creditor charges off a debt, additional contractual interest no longer accrues," so the court did not independently address the issue.

2014). "Where there is no express declaration of waiver, there must be clear, unequivocal, and decisive act showing waiver implied by conduct." *Id.* LVNV Funding established its right to summary judgment on the FDCPA counterclaim by demonstrating there was no issue of material fact as to the non-existence of waiver by Credit One. To support its position that Credit One did not waive its right to accrue contractual interest, LVNV Funding submitted an affidavit of a vice president of collections at Credit One. The vice president swore that "Credit One did not waive the right to accrue interest during its ownership of [Mavaega's] account."

When we review an appeal from the entry of summary judgment, " '[f]acts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion.' " *Green v. Shiverdecker*, 514 S.W.3d 41, 44 (Mo. App. W.D. 2017) (quoting *ITT Comm. Fin.*, 854 S.W.2d at 376). Mavaega did not controvert the fact that Credit One did not waive the right to accrue interest. Instead, Mavaega relied on the erroneous legal argument that Credit One's waiver of its right to collect contractual interest need not be independently proven, and was established as a matter of law by the uncontested fact that Credit One charged off her account and stopped sending periodic statements.

More to the point, it was not LVNV Funding's burden to disprove waiver of the right to collect interest. Instead, it was Mavaega's burden to plead and prove waiver as an essential element of her claimed FDCPA violations.[12] Mavaega's petition did not allege *any* facts addressing Credit One's "intentional relinquishment" of its right to collect contractual interest after charging off Mavaega's account.[13] And Mavaega's motion for summary judgment on her FDCPA counterclaim did not allege *any* uncontroverted

12. This point is emphasized by the cases Mavaega improvidently relies on to claim error in the denial of her motion for summary judgment. To support her claim that TILA prohibits charging contractual interest if an account has been charged off and periodic statements thereafter cease, Mavaega cites to three federal district court opinions *denying motions to dismiss complaints that alleged violations of the FDCPA*. *See Kirk*, 2014 WL 12540481; *Peters v. Northland Group Inc.*, No. 14-0488-CV-W-ODS, 2014 WL 4854658, 2014 U.S. Dist. LEXIS 137643 (W.D. Mo. Sept. 30, 2014); *Peters v. Fin. Recovery Servs., Inc.*, 46 F.Supp.3d 915 (W.D. Mo. 2014). In each case, a question before the court was whether the plaintiffs' complaints should be dismissed for failing to state an FDCPA claim when the complaints alleged that the original creditor waived the right to collect contractual interest by charging off the accounts and ceasing to send periodic statements. *Kirk*, 2014 WL 12540481, at *2; *Northland Group*, 2014 WL 4854658, at *1-2, 2014 U.S. Dist. LEXIS 137643, at *3; *Fin. Recovery Servs.*, 46 F.Supp.3d at 917-18. In each of these cases, the motion to dismiss was denied because the

plaintiffs' complaints sufficiently pleaded waiver pursuant to federal pleading standards as to state a plausible claim for relief under the FDCPA. *Kirk*, 2014 WL 12540481, at *2; *Northland Group*, 2014 WL 4854658, at *1-2, 2014 U.S. Dist. LEXIS 137643, at *3-4; *Fin. Recovery Servs.*, 46 F.Supp.3d at 917-18.

In stark contrast, Mavaega's petition is silent on the issue of waiver. Moreover, none of the aforesaid cases relied on by Mavaega held that waiver could be permissibly inferred solely from the charge off of an account. Instead, the three cases cited by Mavaega assumed, *for the purpose of ruling on a motion to dismiss*, that an express allegation of waiver of the creditor's right to collect contractual interest after charge-off was sufficient to survive the motion to dismiss.

13. Thus, a motion for summary judgment would not have been required to permit the entry of judgment in LVNV Funding's favor on the FDCPA counterclaim. Given the deficiencies in Mavaega's counterclaim pleadings, a motion to dismiss for failure to state a claim would have been sufficient.

facts which would permissibly support or require the inference that Credit One "intentionally relinquished" its right to collect contractual interest after charging off Mavaega's account. On this record, LVNV Funding was entitled to summary judgment on the FDCPA counterclaim as a matter of law because the uncontroverted facts demonstrate that Mavaega had not alleged and could not establish an essential element of her claim—that Credit One waived its right to collect contractual interest. Because Credit One was entitled to continue assessing interest at the contract rate on Mavaega's account, LVNV Funding was similarly entitled to do so, and did not, as a matter of law, violate the FDCPA by charging interest on Mavaega's account at the rate of 20 percent, an amount below the contract rate and in excess of the statutory rate.

 Of course, as we have already explained, though LVNV Funding assessed interest at the rate of 20 percent on Mavaega's account from March 2013 through June 2014, it reversed that assessment and charged no interest for that period, and then elected to assess interest at the statutory rate of 9 percent beginning in July 2014. Had LVNV Funding not been authorized to assess interest at the rate of 20 percent during the time frame that it did, we might be persuaded by Mavaega's argument that the corresponding violations of the FDCPA could not legally be "cured" by LVNV Funding's reversal of the interest charge. The trial court thus erroneously concluded that once Credit One charged off Mavaega's account, Credit One and its subsequent assignees, including LVNV Funding, were precluded from charging contractual interest, and arguably erroneously concluded that any attendant violation of the FDCPA was cured by LVNV Funding's decision to reverse the 20 percent interest charges.[14]

However, "[t]he fact that the trial court used the wrong rationale in granting summary judgment does not require reversal ... if the judgment can be sustained on any other theory." *Alexander v. Chandler*, 179 S.W.3d 385, 389 (Mo. App. W.D. 2005). Because LVNV Funding was not prohibited from charging interest on Mavaega's account at a rate that exceeded the statutory rate, judgment in favor of LVNV Funding on Mavaega's FDCPA counterclaim is appropriate as a matter of law. The trial court did not err in granting LVNV Funding's motion for summary judgment on Mavaega's FDCPA counterclaim and did not err in correspondingly denying Mavaega's motion for summary judgment on her FDCPA counterclaim, notwithstanding that it used the wrong rationale to reach the right result.

14. *LVNV Funding did not file a cross-appeal to challenge the trial court's finding that it was precluded from charging contractual interest. Section 512.020 requires a party to "be 'aggrieved' by the judgment below to have any right to appeal." Schroff v. Smart, 120 S.W.3d 751, 754 (Mo. App. W.D. 2003). "A party is aggrieved when, as an immediate consequence, the judgment operates prejudicially and directly on her rights or interests." Blanchette v. Blanchette, 476 S.W.3d 273, 278 (Mo. banc 2015). "A party is not aggrieved by, and cannot appeal, a judgment that grants all relief sought by the party, but a party can* appeal a judgment that grants only part of the relief sought." *Id.* Because the trial court entered summary judgment in favor of LVNV Funding on Mavaega's FDCPA counterclaim, and permitted LVNV Funding to recover all that it sought to recover—statutory interest at the rate of 9 percent from and after late July 2014—LVNV Funding was not aggrieved by the trial court's stated rationale for its judgment and was not required to file a cross-appeal to defend the entry of judgment in its favor, particularly where we are required to affirm on any basis supported by the record.

Point One is denied.[15]

### Point Two: Class Certification

Mavaega's second point on appeal asserts that the trial court abused its discretion in denying her motion for class certification on her FDCPA counterclaim. Because we conclude that the trial court properly granted summary judgment on the FDCPA counterclaim, we also conclude that Mavaega's motion for class certification on her FDCPA counterclaim was properly denied. *See Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006) (concluding that class-action allegations were properly dismissed where the district court correctly concluded that the plaintiff failed to state a claim on his own behalf under the FDCPA).

Point Two is denied.

### Point Three: LVNV's Collection Claim

 Mavaega's third point on appeal asserts that the trial court erred in granting LVNV Funding's motion for summary judgment on its collection claim against her and in awarding an improper amount to LVNV Funding. Mavaega argues that the trial court erred "on three (3) independent grounds." [Appellant's Brief, p. 34] Mavaega's third point on appeal is impermissibly multifarious in that it challenges two actions taken by the trial court on three independent grounds in contravention of Rule 84.04(d)(1)(a), which requires each point relied on to "[i]dentify the trial court ruling or action that the appellant challenges." Multifarious points on appeal preserve nothing for appellate review. *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 96 n.4 (Mo. App. W.D. 2015). We have, none-theless, exercised our discretion to review Mavaega's complaints *ex gratia*.

 Mavaega first asserts that the trial court erred in entering summary judgment in favor of LVNV Funding on its collections claim against Mavaega because LVNV Funding failed to submit competent evidence establishing that it had title to the debt. "In cases that involve a party attempting to recover on an account owed to some other party, 'proof of an assignment of the account is essential to recovery.'" *CACH, LLC v. Askew*, 358 S.W.3d 58, 61-62 (Mo. banc 2012) (quoting *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 298 (Mo. App. W.D. 2006)). "The party must show clearly through a valid assignment it is the rightful owner of the account at issue." *Id.* at 62. If there are multiple assignments, the plaintiff must prove "the validity of assignment every time the rights to collect the debt are transferred." *Id.* "In other words, every link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing." *Id.*

To prove its ownership of Mavaega's debt, LVNV Funding submitted two affidavits of an employee of Resurgent Capital Services, LP, a servicing agent for LVNV Funding. The first affidavit accompanied LVNV Funding's motion for summary judgment. It stated that LVNV Funding was assigned Mavaega's account on January 10, 2013, and has owned the account since that day. Mavaega's response in opposition to LVNV Funding's motion for summary judgment argued that LVNV

---

**15.** In conjunction with her appeal, Mavaega filed a motion for attorney's fees, claiming that 15 U.S.C. section 1692k entitles her to attorney's fees incurred on appeal. That statute allows for an award of the costs of the action, including reasonable attorney's fees, "in the case of any successful [FDCPA] action." 15 U.S.C. section 1692k(a)(3). Because we have denied Mavaega's first point on appeal, we also deny Mavaega's motion for attorney's fees on appeal.

Funding was not entitled to summary judgment on the collection claim because "it has not established a chain of title to Ms. Mavaega's account in that it has not demonstrated it obtained a direct assignment from Credit One Bank." LVNV Funding's reply in support of its motion for summary judgment set forth the full chain of custody based on a supplemental affidavit from the same employee at Resurgent Capital Services. The supplemental affidavit stated, in relevant part:

8. On or around January 10, 2013, Credit One transferred the Account to FNBM LLC; FNBM LLC then transferred the Account to Sherman Originator III LLC; and, Sherman Originator III LLC then transferred the Account to Sherman Originator LLC.

9. On or around January 31, Sherman Originator LLC transferred the account to LVNV, and LVNV has owned the Account since that date.

Attached to the supplemental affidavit were two documents: (1) a bill of sale and assignment from FNBM LLC to Sherman Originator III LLC; and (2) a declaration of account transfer that indicated Sherman Originator III LLC sold and assigned the account to Sherman Originator LLC, and that indicated Sherman Originator LLC sold and assigned the account to LVNV Funding. Mavaega did not file a sur-reply in opposition to LVNV's motion for summary judgment.

Rule 74.04(c)(3) allows a movant to file a reply memorandum of law explaining why summary judgment is appropriate. In conjunction with that memorandum of law, the movant may "file a statement of additional material facts as to which movant claims there is no genuine issue." Rule 74.04(c)(3). If the movant files a statement of additional material facts, then the adverse party has an obligation to file a sur-reply, admitting or denying each factual statement as well as attach a copy of any additional discovery, exhibits, or affidavits on which the adverse reply relies. Rule 74.04(c)(4). "A sur-reply that does not comply with Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement of additional material facts is an admission of the truth of that numbered paragraph." *Id.*

By failing to file a sur-reply, Mavaega admitted those additional material facts set forth in LVNV Funding's reply in support of its motion for summary judgment. Thus, there is no genuine issue of material fact as to LVNV Funding's ownership of Mavaega's account so that summary judgment in favor of LVNV Funding on its collection claim was not erroneous.

 Mavaega's second claim of error with respect to the disposition of LVNV Funding's collections claim is that the trial court erred in awarding LVNV Funding $996.25. Mavaega asserts:

That award comprises the balance on Mavaega's account at the time Credit One sold the debt, $826.83, plus interest accrued at 9%. Notably, over half the $826.83 comprises late fees and interest, *i.e.*, $427.33 ($91.33 of which is interest charged from April 2012 to December 2012 at the rate of 23.90% per annum).

[Appellant's Brief, p. 37] Mavaega claims that the damage award is a windfall and, instead, should be limited to the amount LVNV Funding actually paid to acquire Mavaega's account.

 Mavaega offers no support for her assertion that a debt collector like LVNV Funding is limited to collecting what it paid for the debt. "Failure to cite relevant authority supporting [a] point or to explain the failure to do so preserves nothing for review." *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 516 (Mo. App. W.D. 2013). Further, even if Mavaega would have provided citation to

relevant authority to support her claim, her allegation that LVNV Funding paid less than the full balance to acquire Mavaega's account is not supported by evidence in the record so that this argument could not have been considered when the trial court reviewed LVNV Funding's motion for summary judgment.

Mavaega's final claim of error with respect to LVNV Funding's collection claim is that, in awarding LVNV Funding $996.25, the trial court erroneously permitted LVNV Funding to collect compound interest. In other words, Mavaega argues that the trial court erroneously allowed LVNV Funding to collect statutory interest at the rate of 9 percent on the entire $826.83 balance, $427.33 of which represented previously incurred interest and fees. Mavaega claims that there are only two scenarios in which compound interest may be available on a judgment: (1) where the court, sitting as a court of equity, believes justice requires compound interest to serve the cause of equity; and (2) where the parties consent to compound interest in the contract in question. *Health Care Found. of Greater Kansas City v. HM Acquisitions*, 507 S.W.3d 646, 669 (Mo. App. W.D. 2017). Mavaega argues that her contract with Credit One does not permit the collection of compound interest by assessing additional interest on accrued interest. Mavaega further contends that equity does not demand that LVNV Funding be permitted to recover compound interest. Mavaega's argument is not persuasive, for several reasons.

■ First, LVNV Funding's motion for summary judgment plainly sought the entry of judgment in its favor "in the sum of $826.83, plus interest as provided by law from July 21, 2014, and costs." This prayer for relief mirrored the prayer for relief in LVNV Funding's petition. Yet Mavaega did not contend in her answer to the petition that the assessment of interest at the lawful rate against the entirety of the amount due on her account would violate her contract with Credit One by assessing interest against accrued interest. And though Mavaega loosely mentioned in her response to LVNV Funding's motion for summary judgment that LVNV Funding sought "damages in amounts that are unlawful (such as seeking interest at an unlawful rate and compound interest)," Mavaega never developed this argument in her response, and certainly never alerted the trial court to her position that her contract with Credit One limited the components of her unpaid balance as to which interest could be assessed. *See Kerr v. Curators of Univ. of Mo.*, 512 S.W.3d 798, 815 (Mo. App. W.D. 2016) ("[O]ur review of a grant of summary judgment is limited to those issues raised in the trial court, and this court will not review or convict a trial court of error on an issue that was not put before the trial court to decide.").

■ Even had Mavaega presented this issue to the trial court for its consideration, which she did not, we would not be persuaded. The record reflects that the last periodic statement Mavaega received from Credit One for the period ending December 4, 2012, indeed showed a balance due of $826.83, and that the "balance subject to interest rate" per the credit contract was $700.50. As we have already explained, LVNV Funding was lawfully entitled to assess interest at the contract rate of 23.9 percent. Had it done so against the amount Credit One deemed "subject to interest" per the credit agreement with Mavaega, the amount of interest that could lawfully have been awarded by the trial court would have approximated $641.70 (23.9 percent from January 31, 2013, when the trial court found that LVNV Funding acquired the account through November 28, 2016, the date of the trial court's

amended Judgment). Added to the uncontested amount due on the account, $826.83, the judgment in favor of LVNV Funding could permissibly have been $1,468.53. Mavaega has not been legally damaged by the entry of a judgment against her in the far smaller sum of $996.25.[16] *See Coats v. Hickman*, 11 S.W.3d 798, 807 (Mo. App. W.D. 1999) ("Not every error is reversible error. To be reversible error, the appellant must demonstrate that she was prejudiced by the trial court's erroneous action.").

The trial court committed no reversible error in awarding LVNV Funding a judgment in the amount of $996.25.

Point Three is denied.

### Conclusion

The trial court's judgment is affirmed.

All concur

---

**16.** In fact, even had LVNV Funding been limited to recovery to statutory interest at the rate of 9 percent as a matter of law (as opposed to by its own volition), the amount of interest the trial court could have awarded for the period of time from LVNV Funding's ownership of the debt through the date of the amended judgment would have been approximately $241.69, yielding a total judgment of $1,068.52, an amount that once again exceeds the total amount of the judgment awarded LVNV Funding.